**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                    :
LINDA TRUESDELL,                    :
                                    :
          Plaintiff,                :          Civil Action No. 07-1926 (FLW)
                                    :
          v.                        :
                                    :                    **OPINION**
SOURCE ONE PERSONNEL, INC.,         :
ONE MEDICAL MANAGEMENT,             :
                                    :
          Defendants.               :
_____ :

**WOLFSON, United States District Judge:**

Presently before the Court is a motion by Defendant, Source One Personnel, Inc./ One

Medical Management ("Defendant" or "SOMM"), for summary judgment, pursuant to Fed. R.

Civ. P. 56, to dismiss the Complaint of Plaintiff Linda Truesdell ("Plaintiff" or "Truesdell").

Plaintiff alleges that Defendant demoted and then terminated her in retaliation for taking family

medical leave in violation of the Federal Family and Medical Leave Act, 29 U.S.C. 2601, et seq.

("FMLA"), and the New Jersey Family Leave Act, N.J.S.A. 34:11B-3 ("NJFLA").  Defendant

argues that it is entitled to summary judgment because it terminated Plaintiff for being derelict in

her job responsibilities.  Plaintiff filed an Opposition to Defendant's Motion.  For the reasons

that follow, the Court grants Defendant's Motion for Summary Judgment.


**I.      BACKGROUND AND PROCEDURAL HISTORY**

On April 24, 2007, Truesdell filed this lawsuit alleging that SOMM demoted and then

terminated her in retaliation for taking family medical leave in violation of the FMLA and the

NJFLA.  On June 1, 2007, Plaintiff filed her First Amended Complaint ("Complaint").  The

following version of events is not disputed unless otherwise noted.

SOMM provides support to medical practitioners by performing medical billing and other

services as requested by clients.  Df. App., Ex. B, Harris Cert. ("Harris Cert.") ¶ 1.  SOMM

employed Truesdell from February 11, 2003 through April 9, 2007, at which time she was either

demoted or terminated from her position.  Df. Facts ¶ 2; Pl. Facts ¶ 2; Compl. ¶ 9.[1]  While

employed at SOMM, Plaintiff received several promotions and ultimately worked as the Director

of Physician Services.  Truesdell Dep. 53:1-56:21.  As the Director of Physician Services at

SOMM, Truesdell was responsible for client satisfaction, maintaining client relationships, and

assisting with billing-related issues.  Pl. App., Ex. E, Truesdell Dep., dated June 3, 2008

("Truesdell Dep."), 54:7-56:21, 189:19-21.  Plaintiff reported directly to Ruth Harris ("Harris"),

a minority share, 20 percent, owner of the business.  Harris Cert. ¶ 3; Truesdell Dep. 53:19-54:3.

After learning that her father had a stroke,[2] Plaintiff took an authorized emergency medical leave

from March 21, 2007 until April 9, 2007 to tend to family matters.  Compl. ¶¶ 5-7; Harris Cert.

¶ 31; Pl. Facts ¶ 31.  Plaintiff does not dispute that Harris redistributed Plaintiff's work to other

---

[1]Plaintiff alleges that on April 9, 2007 she was demoted to a per diem employee and was
not terminated until May 31, 2007.  Compl. ¶ 9.  However, according to Defendant, after some
discussion whether to keep Plaintiff employed in some other capacity, Plaintiff was terminated
on April 9, 2007.  Df. Facts ¶ 2.

[2]Defendant claims on March 19, 2007, Truesdell reported that her father was ill and she
needed to take leave.  Harris Cert. ¶ 6.  Although in her Complaint Plaintiff alleges she notified
Harris that her father suffered a seizure, she now asserts that she was not aware of her father's
illness until March 20, 2007.  Compl. ¶ 5-6; Pl. Facts ¶ 7.  As the actual date of when Plaintiff
learned that her father fell ill and she informed SOMM that she needed to take leave is not
material, it does not preclude summary judgment here.

SOMM personnel so that it could be completed in her absence.  Pl. Opp. at 6.  Plaintiff, however,

disputes that a review of the materials on her desk revealed that she was not performing her job

responsibilities.  Pl. Facts ¶¶ 8-9; Harris Cert. ¶ 8.

**Documents SOMM Allegedly Discovered on Plaintiff's Desk & Plaintiff's Response**

Harris found a letter, dated March 19, 2007, from Dr. Rajendra Prasad Gupta, M.D. ("Dr.

Gupta"), at the Hopewell Valley Medical Group, P.A., on Truesdell's desk.  Df. App., Ex. D,

Letter from R. Gupta to L. Truesdell, dated March 19, 2007 ("Ex. D").  In this letter, Dr. Gupta

expressed his dissatisfaction with Truesdell and SOMM; he indicated that he was very upset that

Truesdell had cancelled three meetings with him, he was not getting the proper answers to his

questions, and he only "stayed longer than intended [with SOMM,] in spite of continued

problems," because he had "a special relationship" with Truesdell.  Id.  Although Truesdell was

at work when she received this facsimile on March 20, 2007, she did not notify Harris or anyone

else at SOMM.  Truesdell Dep. 192:12-16.  Plaintiff claims that she failed to bring it to the

attention of Harris or another SOMM employee because that day Harris had left the office early

to visit colleges with her daughter, that night Plaintiff learned that her father was ill, and the

following day Plaintiff took family medical leave.  Id. 190:23-191:15, 192:4-11.  Plaintiff said

that she did not have a chance to respond to the letter personally because she was distracted by

her father's illness.  Id. 190:18-191:2, 192:4-16; Pl. Facts ¶ 12.

While Plaintiff was on leave, SOMM found outstanding billing information from client

Dr. Claudia Hanstveit ("Dr. Hanstveit"), which indicated that it was received by SOMM on

December 4, 2006.  Df. App., Ex. H; Df. App., Ex. I, Truesdell Dep. 228:15-229:5.  According to

Defendant, Plaintiff did not complete any of Dr. Hanstveit's billing and it was completed by

other SOMM personnel on April 23, 2007.  Df. Facts ¶ 16; Df. App., Ex. H.  Truesdell admitted

that she oversaw the staff responsible for Dr. Hanstveit's account and that she received the

billing information from the doctor, but she did not have an explanation for why she did not

complete the billing work.  Truesdell Dep. 229:5-15.  Plaintiff testified that she could not

complete the billing work without additional information from the provider, Pl. Facts ¶ 16;

Truesdell Dep. 231:10-17, and admitted that this documentation sitting on her desk from

December 2006 until she took leave on March 21, 2007 was a dereliction of her job

responsibilities.  Truesdell Dep. 230:4-10, 231:18-232:8.

Harris also found a check from a patient, Anna Russo ("Russo"), on Truesdell's desk

made out to "Source One Med. Mgmt," dated January 4, 2007.  Df. App., Ex. J.[3]  At her

deposition, Truesdell could not recall when the check was received by SOMM or what had been

done with it, but admitted that it would not have been acceptable if it had been sitting idle on her

desk from January 4, 2007 until March 21, 2007.  Df. App., Ex. K, Truesdell Dep. 91:6-95:6.

According to Defendant, SOMM also found an invoice for patient Icy Jennings

("Jennings") in Truesdell's work area.  Truesdell testified that she was not sure if the bill had

been provided to her during her employment at SOMM because it was an account that was added

to her workload when another manager left.  Df. App., Ex. L, Truesdell Dep. 118:17-119:3.

Truesdell said that even if the invoice was on her desk, she could not process it without the

---

[3]It appears that Plaintiff does not dispute that this check was on her desk, but disputes that
the check was several months old, citing to Harris's deposition for support.  Pl. Facts ¶ 18.
Harris testified that patient checks are not normally sent directly to SOMM, that she was unaware
of exactly when the check was received, but she found the check, dated January 4, 2007, in the
bottom of the pile of work on Truesdell's desk.  Pl. App., Ex. C, Harris Dep., dated June 16,
2008 ("Harris Dep."), 93:1-102:17.

identity of a referring doctor.  Id. 119:4-120:2.  She admitted that a failure to seek the

information herself or ask someone else to do it would have been a dereliction of her job

responsibilities.  Id. 120:3-14.  Similarly, Truesdell testified that information was missing for

another patient's, Stanley Przycki ("Przycki"), invoice, which SOMM allegedly found on

Plaintiff's desk.  Df. App., Ex. N, Truesdell Dep. 119:16-22, 120:15-18.  Truesdell did not know

if she ever sought the information that would have allowed her to bill for the services rendered to

Przycki and admitted that her failure to obtain the information or have some else obtain it would

have also been a dereliction of her job responsibilities.  Id. 120:21-122:8.

Harris found a letter dated January 5, 2007 from Auto Injury Solutions on Truesdell's

desk in which Bryan Jackson ("Jackson") informed Dr. Daniel Rosenberg ("Dr. Rosenberg") that

certain documents were time sensitive and needed to be signed and returned no later than

February 14, 2007.  Df. App., Ex. O, Letter from B. Jackson to D. Rosenberg, dated Jan. 5, 2007

("Ex. O").  Truesdell was unable to state whether or not the letter was on her desk or whether she

did anything with it, and merely testified that "[t]here were a large number of documents

removed from Liz Idell's desk and placed on [her] desk" when Idell left SOMM in either

December of 2006 or early 2007.  Truesdell Dep. 125:4-132:3.  Truesdell now admits that

although this letter was on her desk, she has no recollection of doing anything with it, delegating

the work, or telling the client she was unable to do the work.  Pl. Facts ¶ 24.

The day before Truesdell returned from leave, Harris told Dawn DeCarlo ("DeCarlo"),

SOMM's Director of Human Resources, that she intended to demote Truesdell because there had

been some issues with her job performance.  Pl. App., Ex. L, Dawn DeCarlo Dep., dated June 18,

2008, ("DeCarlo Dep.") 68:3-71:23.  During this brief conversation, Harris showed DeCarlo a

letter from a client, a very large folder, and indicated that many issues had arisen with regard to Truesdell's job performance.  Id.  According to Harris, when Truesdell returned, Harris confronted her about what she discovered on her desk and Truesdell said she knew about it. Harris Cert. ¶ 12.  According to Truesdell, however, when she returned to work she was only confronted with one document and she was immediately demoted; she was ultimately terminated allegedly in retaliation for taking family leave and because she had an attorney contact SOMM to urge SOMM to reinstate Plaintiff to her prior compensation.  Truesdell Dep. 185:20-188:12; Pl. Facts ¶ 32.

### Additional Performance Issues

Another client, Dr. Michael Eglow ("Dr. Eglow") of the Foot Group, complained to Harris on December 13, 2006 that he had left messages for Truesdell for several days and she had not called him back.  Df. App., Ex. F, Emails M. Eglow & C. Kurtzer to L. Truesdell & R. Harris ("Ex. F").  Dr. Charles Kurtzer ("Dr. Kurtzer") and Dr. Eglow repeatedly expressed their dissatisfaction with Truesdell and SOMM via email on December 13, 2006, January 23, 2007, February 7, 2007, and March 15, 2007.  Ex. F.  Ultimately, due to SOMM's unsatisfactory performance, in an email on March 17, 2007, Dr. Kurtzer offered to settle a disputed bill for the last quarter of 2006 of $11056.40 by paying $5528.80.  Id.  Plaintiff claims that she "responded [to Dr. Eglow] as soon as practicable under the circumstances," Pl. Facts. ¶ 13, she "was working on a problem with the provider's submissions," Pl. Facts ¶ 14, and she admitted that failing to return client phone calls would violate her job responsibilities.  Truesdell Dep. 194:8-23. Plaintiff also admitted that she knew that there were complaints about her job performance.  Id.

194:24-195:4.[4]

On September 26, 2008, Defendant filed a motion for summary judgment to dismiss Plaintiff's Complaint because Plaintiff fails to present a genuine issue of material fact that demonstrates that her termination was related to her leave.  Plaintiff opposes Defendant's Motion, arguing that she was demoted and then terminated in retaliation of her FMLA and/or the NJFLA leave.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  For the reasons stated herein, the Court grants Defendant's Motion.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A fact is material only if it might affect the outcome of the suit under the applicable rule of law.  Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id. The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment.  Celotex, 477 U.S. at 330.  Once the moving party satisfies this initial burden, the non-

---

[4]Defendant also avers that there were additional clients that complained about Truesdell or terminated SOMM's services because of the way she handled their accounts.  For example, Defendant claims that because of Truesdell's handling of the Ewing Medical Group's account, it terminated SOMM's services.  Harris testified that Dr. David Lo ("Dr. Lo") told her that Ewing Medical Group was terminating SOMM's services because of Truesdell's performance, and although he allegedly had a meeting with Plaintiff, in which she allegedly promised to improve her handling of his account, she failed to do so.  Harris Dep. 183:21-185:12.  However, because Defendant fails to produce any supporting evidence to support this inadmissible hearsay, the Court, in accord with the Federal Rules of Evidence, does not consider these additional assertions on this Motion.  Similarly, the Court does not consider Plaintiff's inadmissible hearsay submissions.

moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324.  In other words, the non-moving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999).  A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In evaluating the evidence, a court must "view the inferences to be drawn from the underlying facts in the light most favorable to the [non-moving] party." Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

The motion is appropriately granted when that party is entitled to judgment as a matter of law.  Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. V.I. 1990).  Even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." Morris v. Orman, No. 87-5149, 1989 WL 17549, at *8 (E.D. Pa. Mar. 1, 1989) (citing Childers v. Joseph, 842 F.2d 689 (3d Cir. 1988)); see also Atkinson v. City of Phila., No. 99-1541, 2000 WL 793193, at *5 n. 8 (E.D. Pa. June 20, 2000).

III.    **DISCUSSION**

The FMLA entitles an eligible employee to take "a total of 12 work weeks of leave during any 12-month period. . . .   In order to care for the . . . parent, of the employee, if such . . . parent has a serious health condition."  29 U.S.C. § 2612(a)(1)(C).  The NJFLA entitles an employee to "a family leave of 12 weeks in any 24-month period upon advance notice to the employer."  N.J.S.A. 34:11B-4.  After the employee returns from her leave, she must be restored to her previous position or another position "with equivalent employment benefits, pay, and other terms and other terms and conditions of employment."  29 U.S.C. § 2614(a)(1); <u>see also</u> N.J.S.A. § 34:11B-7.  "The elements of a claim under the NJFLA are similar to those under the FMLA."  <u>Santosuosso v. Novacre Rehabilitation</u>, 462 F. Supp. 2d 590, 596 (D.N.J. 2006) (citing <u>Fishman v. La-Z-Boy Furniture Galleries of Paramus, Inc.</u>, No. 04-749, 2005 WL 2000147, at *5 n. 10 (D.N.J. Aug. 17, 2005).  To establish a <u>prima facie</u> claim for retaliation under the FMLA and NJFLA, the plaintiff must demonstrate that: (1) she took a FMLA/NJFLA leave; (2) she suffered from an adverse employment decision; and (3) the adverse decision was causally related to her FMLA/NJFLA leave.  <u>Santosuosso</u>, 462 F. Supp. 2d at 596 (citing <u>Conoshenti v. Public Serv. Elec. & Gas Co.</u>, 364 F.3d 135, 146 (3d Cir. 2004).[5]

Once the plaintiff establishes a <u>prima facie</u> case, the claims must be then analyzed under the burden-shifting framework articulated in <u>McDonnell Douglas Corp.v. Green</u>, 411 U.S. 792

_____

[5]Under the NJFLA, Plaintiff must show that: (1) she was employed by Defendants; (2) she was performing satisfactorily; (3) a qualifying leave event occurred; (4) she took or sought to take leave from her employment; and (5) she suffered an adverse employment action as a result. <u>DePalma v. Building Inspection Underwriters</u>, 350 N.J. Super. 195, 213, 794 A.2d 848 (App. Div. 2002).  Once Plaintiff establishes a <u>prima facie</u> case, the burden shifting framework applies. Accordingly, the Court addresses Plaintiff's claims together herein.

(1973).  The burden of production then shifts to the employer to rebut the <u>prima facie</u> case by "articulat(ing) some legitimate, nondiscriminatory reason" for its alleged unlawful action. <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Santosuosso</u>, 462 F. Supp. 2d at 597.  Then, the burden shifts back to Plaintiff to offer sufficient evidence that the reason offered by Defendant was a pretext for retaliation.  <u>Id.</u>  "In order to survive summary judgment, a plaintiff must 'either (i) discredit[ ] the [defendant's] proffered reasons . . ., or (ii) adduc[e] evidence . . . that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.'"  <u>Schlifke v. Trans World Entertainment Corp.</u>, 479 F. Supp. 2d 445, 452 (D.Del. Mar. 27, 2007) (citing <u>Torre v. Casio</u>, 42 F.3d 825, 830 (3d Cir. 1994) (discussing the burden-shifting standard in <u>McDonnell Douglas</u> in the Age Discrimination in Employment Act ("ADEA") context).  In summary, when evaluating a plaintiff's discrimination claim, the Court engages in the following three-step process:

> (1) whether the plaintiff establishes a <u>prima facie</u> discrimination case;
>
> (2) if so, the burden of production, not persuasion, shifts to the defendant to show a non-discriminatory reason for the decision;
>
> (3) if the defendant meets this requirement, the plaintiff must show by a preponderance of the evidence that the non-discriminatory reason was pretext for discrimination.

<u>McDonough v. Cooksey</u>, No. 05-00135, 2007 WL 1456202, at *3 (D.N.J. 2007) (citing <u>Jones v. Sch. Dist. of Phila.</u>, 198 F.3d 403, 410 (3d Cir. 1999) (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); <u>Tex. Dep't of Cmty Affairs v. Burdine</u>, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

## A.   Plaintiff's Prima Facie Case

SOMM appears to only challenge Truesdell's ability to show causation, prong three, of

her prima facie case for retaliation under the FMLA and NJFLA.  After learning that her father had a stroke, Plaintiff took a FMLA/ NJFLA leave from March 21, 2007 until April 9, 2007 to tend to his illness.  Harris Cert. ¶ 31; Pl. Facts ¶ 31.  The parties dispute whether Plaintiff was terminated outright or whether she was only demoted to a per diem contractor on April 9, 2007, and then terminated on May 31, 2007.  Df. Facts ¶ 2; Pl. Facts ¶ 2; Compl. ¶ 9.  In either case, whether Plaintiff was terminated or demoted on April 9, 2007, when she returned to work after taking a FMLA/NJFLA leave, Defendant's action constitutes an adverse employment decision.

The only evidence Plaintiff offers to show that the adverse employment action was casually related to her FMLA/NJFLA leave is the temporal proximity between the taking of her FMLA leave and her demotion and/or termination upon her return.  "This temporal proximity creates an inference, for the purpose of deciding a motion for summary judgment, that her demotion[] and termination could be retaliatory in nature." Santosuosso, 462 F. Supp. 2d at 598. "With respect to temporal proximity, the Supreme Court has stated that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close[ ]'.'" Smith v. Medpointe Healthcare, Inc., No. 04-6315, 2007 WL 556914, at *6 (D.N.J. Feb. 15, 2007) (quoting Schriner v. Sysco Food Service of Cent. Pa., 2005 WL 1498497 * 12 (M.D. Pa. 2005) (quoting Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)).  In this case, Plaintiff suffered an adverse employment action on the day she returned from her leave.  The Court finds that this mere temporal proximity is sufficient evidence of causality, as the action took place on the very day Plaintiff returned to work from leave.  Thus, Plaintiff demonstrates that (1) she took

11

a FMLA/NJFLA leave; (2) she suffered from an adverse employment decision; and (3) the adverse decision was causally related to her FMLA/NJFLA leave.  Accordingly, the Court finds that Plaintiff has established a <u>prima</u> <u>facie</u> case for retaliation.[6]

### B.     Defendant's Non-discriminatory Reason for Plaintiff's Termination

The burden of production shifts to Defendant to show a non-discriminatory reason for its decision.  In this case, Defendant repeatedly articulates that it terminated Plaintiff because of a dereliction of her job responsibilities.  Plaintiff admits that Defendant "proffers a 'bagful of legitimate reasons'" for terminating her, Pl. Opp. at 11, and admitted that she knew that there were complaints about her job performance.  Truesdell Dep. 194:24-195:4.

Plaintiff does not dispute that Harris redistributed her work when she was on leave so that it could be completed in her absence.  Pl. Opp. at 6.  SOMM asserts that when Harris reviewed the materials on Truesdell's desk to determine which work needed to be completed, she discovered Truesdell was not doing her job properly.  Harris Cert. ¶¶ 7-8.  Harris stated that she discovered numerous indications on Truesdell's desk that she had failed to complete her job responsibilities, including, <u>inter</u> <u>alia</u>, a check made out to a client from a patient that had not been processed, client requests that had not been addressed, and inquiries that had been ignored.  <u>Id.</u> ¶ 8.

Harris found a letter, dated March 19, 2007, written by Dr. Gupta at the Hopewell Valley Medical Group, P.A., on Plaintiff's desk.  Ex. D.  In this letter, Dr. Gupta expressed his

---

[6]Plaintiff, however, is unable to show that she was performing satisfactorily as required to establish a <u>prima</u> <u>facie</u> case under the NJFLA.  Rather, Plaintiff admits that there were complaints about her job performance.  Truesdell Dep. 194:24-195:4.  Even if Plaintiff were able to establish a <u>prima</u> <u>facie</u> case under the NJFLA, the Court would still dismiss her claims under the applicable burden shifting framework as discussed herein.  <u>See</u> Part III .B. & C., <u>infra.</u>

dissatisfaction and unhappiness with Truesdell.  Id.  Dr. Gupta complained that Plaintiff had

cancelled three meetings with him and that she was not properly answering his questions.  Id.

Truesdell failed to notify Harris or anyone else at SOMM that she received this client letter,

Truesdell Dep. 192:12-16, and SOMM only learned of it when Harris found it while Plaintiff was

out on leave.

On Plaintiff's desk, Harris also found outstanding billing information from another client,

Dr. Hanstveit, which indicated that it was received by SOMM on December 4, 2006.  Df. App.,

Ex. H; Df. App., Ex. I, Truesdell Dep. 228:15-229:5.  Although Truesdell oversaw the staff

responsible for Dr. Hanstveit's account and she had the necessary billing information, the work

had not been completed.  Truesdell Dep. 229:5-15.  According to Defendant, it was not done

until April 23, 2007 by other SOMM personnel.  Df. Facts ¶ 16; Df. App., Ex. H.

Harris also found a check, dated January 4, 2007, from a patient, Anna Russo, on

Truesdell's desk made out to "Source One Med. Mgmt" in the bottom of the pile of work on

Truesdell's desk.  Df. App., Ex. J; Pl. App., Ex. C, Harris Dep., dated June 16, 2008 ("Harris

Dep."), 93:1-102:17.  Plaintiff admitted that her failure to process this check was unacceptable,

Pl. Facts ¶ 19, and thus, admitted that one of Defendant's stated justifications for terminating her

employment is legitimate.

On the day before Truesdell returned from leave, Harris informed SOMM's Director of

Human Resources, DeCarlo, that she intended to demote Truesdell because there had been some

issues with her job performance.  DeCarlo Dep. 68:3-71:23.  During this brief conversation,

Harris showed DeCarlo a letter from a client and a very large folder, and indicated that many

issues arose in regards to Truesdell's job performance.  Id.  Accordingly, Defendant articulates a

legitimate non-discriminatory reason – Plaintiff's dereliction of her job responsibilities – for demoting or terminating Plaintiff, an at-will employee, upon her return from leave.

Further, Defendant offers additional supporting evidence to demonstrate that it believed that Plaintiff was not meeting its employment expectations.  SOMM offers an email exchange from another client, Dr. Eglow and Dr. Kurtzer of the Foot Group, who complained to Harris that they had left messages for Truesdell for several days and she had not called them back.  Ex. F. Truesdell admitted that failing to return client phone calls would violate her job responsibilities. Truesdell Dep. 194:8-23.[7]  She also admitted that she knew that there were complaints about her job performance.  Id. 194:24-195:4.  In reviewing this email exchange, it is evident that Dr. Kurtzer and Dr. Eglow expressed repeated dissatisfaction with Truesdell via email on December 13, 2006, January 23, 2007, February 7, 2007, and March 15, 2007.  Ex. F.  Ultimately, due to SOMM's inadequate performance, in an email on March 17, 2007, Dr. Kurtzer offered to settle a disputed bill of $11056.40 for the last quarter of 2006 by paying $5528.80.  Id.  Accordingly, the Court finds that SOMM has articulated a legitimate, non-discriminatory reason – Truesdell's sub-par performance – for demoting or terminating Truesdell on April 9, 2007.

### C.    Defendant's Reason was Not Pretext for Discrimination

As Defendant has presented a legitimate, non-discriminatory reason for terminating Plaintiff, Truesdell must show by a preponderance of the evidence that this non-discriminatory reason was a pretext for discrimination.  Plaintiff attempts to rebut Defendant's legitimate non-discriminatory reason for terminating her by (1) claiming that SOMM was understaffed and

---

[7]Plaintiff claims that she "was working on a problem with the provider's submissions" and she "responded as soon as practicable under the circumstances."  Pl. Facts ¶¶ 13-14.

14

poorly run; (2) arguing that her past performance demonstrates that she was a valuable

performer; and (3) offering reasons for her failure to complete the tasks on her desk.  Plaintiff,

however, is unable to "either (i) discredit[ ] the [defendant's] proffered reasons . . ., or (ii)

adduc[e] evidence . . . that discrimination was more likely than not a motivating or determinative

cause of the adverse employment action."  Schlifke v. Trans World Entertainment Corp., 479 F.

Supp. 2d 445, 452 (D.Del. Mar. 27, 2007) (citing Torre v. Casio, 42 F.3d 825, 830 (3d Cir.

1994).  Plaintiff fails to offer evidence that her termination was predicated on her FMLA or

NJFLA leave.  Indeed, based on the record, no reasonable jury could find that Plaintiff's leave

was the cause of her termination.  Rather, her leave merely provided SOMM an opportunity to

discover Truesdell's deficiencies in her performance.  For completeness, the Court will discuss

each of Plaintiff's rebuttal arguments to demonstrate why each fails to raise even an inference

that Defendant's adverse employment action was retaliatory.

First, Plaintiff attempts to suggest that her performance problems were due to the fact that

SOMM was "understaffed and overwhelmed by a [health care] system characterized by mistakes,

delays, and other problems," and "Harris's mismanagement of [SOMM's] business compounded

these well recognized problems."  Opp. at 3.  Truesdell asserts that she made complaints to

Harris that she had too much work and her subordinate staff was incompetent.  Plaintiff also

complains that Harris increased her responsibilities, but failed to provide her additional

assistance even though she asked for a secretary.  Harris Dep. 231:5-232:18.  Plaintiff contends

that Defendant now has a written compliance plan for billing requirements that was not in effect

during Plaintiff's employment, Harris Dep. 93:18-94:18, which Plaintiff complains that SOMM

should have adopted earlier[8] to reduce errors, fraud, and abuse.  Pl. Opp. at 4.  Even if all of

Plaintiff's assertions are true, they are not relevant to the inquiry before the Court:  whether

Defendant's reason for terminating Plaintiff was a pretext for discrimination.  Thus, Plaintiff's

attempt to rebut Defendant's legitimate non-discriminatory reason for terminating her on the

grounds that SOMM was poorly run is irrelevant and unpersuasive.

Second, Plaintiff disputes that SOMM learned that she had not been doing her job when

Harris redistributed Plaintiff's work while she was out on leave so that it could be completed in

her absence.  Pl. Opp. at 6.  She contends that SOMM fabricated this reason for her termination

only after Plaintiff's attorney contacted SOMM and she filed suit.  Truesdell Dep. 185:20-

188:12; Pl. Opp. at 6.  Plaintiff attempts to support these allegations by asserting that she was a

valuable member of SOMM's team; however, she offers evidence that is contrary to her

argument and is consistent with Defendant's contention that it only learned of Plaintiff's failure

to properly perform her job responsibilities while she was out on leave.

Plaintiff states that she continued to receive positive evaluations and pay raises during her

employment at SOMM.  Plaintiff offers a 2004 evaluation in which she was given good grades

for organizational skills.  Pl. Ex. B.  In a memorandum dated February 2005, Harris listed

Plaintiff's many accomplishments noting that she was a "SOMM expert."  Ex. D.  Plaintiff

contends that she received three raises and continued to do well at SOMM.  In addition, Plaintiff

directs the Court to two memoranda dated July 2006, which detailed a lunch meeting at the Olive

Garden in which two members of Plaintiff's staff were encouraged to voice their feelings about

---

[8]Plaintiff asserts that in 1998 the Federal Health and Human Services Office of the
Inspector General recommended that companies adopt such policies.  Pl. Opp. at 4.

16

Truesdell.  Thereafter, Harris took steps to reduce Plaintiff's workload.  Plaintiff argues that this is evidence that Harris recognized she was a valuable, but overburdened member of SOMM.  Pl. Opp. at 5-6.  Then, Plaintiff offers DeCarlo's testimony that she was unaware of any complaints about Plaintiff's performance until about a week after Plaintiff left to see her parents.  DeCarlo Dep. 57:16-68:11.  DeCarlo also testified that the day before Truesdell returned from leave, Harris told DeCarlo that she intended to demote Truesdell because there had been some issues with her job performance.  Id. 68:3-71:23.  DeCarlo's deposition, which Plaintiff cites, directly contradicts Plaintiff's assertion that Harris or SOMM fabricated this reason for terminating Plaintiff in retaliation for her attorney contacting SOMM or her filing suit.  Pl. Opp. at 6.  This testimony instead confirms that Plaintiff's performance issues persisted prior to this alleged reason for retaliation.  Thus, Plaintiff fails to offer any evidence that SOMM retaliated against her on April 9, 2007, because her lawyer contacted SOMM or because she filed a lawsuit against SOMM sometime after that date.

Similarly, Plaintiff is unable to use her past performance to demonstrate that her demotion or termination on April 9, 2007 was in retaliation for taking FMLA or NJFLA leave. In this connection, Plaintiff merely offers bare conclusory allegations yet fails to produce any evidence that she was in fact demoted on April 9, 2007, and then later terminated on May 31, 2007 because she took leave, her attorney contacted Defendant, or she filed this lawsuit.  Plaintiff is unable to produce any evidence that SOMM was motivated by a discriminatory purpose in taking an adverse employment action; rather, all of the evidence produced by Plaintiff merely shows that Plaintiff was terminated at some point after she took leave.  While this temporal proximity can be sufficient to establish a prima facie case, it alone is not sufficient to rebut

Defendant's proffered reasons for, or show that discrimination was more likely than not, a motivating or determinative cause of, the adverse employment action.

Third, Plaintiff attempts to argue that the Court should not consider Harris's alleged findings that Plaintiff was derelict in her duties because she is an interested witness and Plaintiff also provides explanations for why Harris allegedly found incomplete work on her desk. Plaintiff's arguments in this regard fail because (1) the Court can consider Harris's findings, most of which Plaintiff admits to in her deposition and briefing and (2) her explanations of why she failed to properly complete her assignments do not rebut Defendant's legitimate non-discriminatory reason for taking an adverse employment action against her.

In an effort to dispute Harris's contentions, Plaintiff argues that "Defendant's claims are negated because they depend on Harris's biased interpretation" and Harris owned and continues to own a minority share, 20 percent, of the business.[9]  Pl. Opp. at 3.  Plaintiff argues that there is no evidence to support Defendant's contentions that is uncontradicted, unimpeached, or that comes from disinterested witnesses.  Pl. Opp. at 11-12 (citing Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 136 (2000); Hill v. City of Scranton, 411 F.3d 118, 131 n. 22 (3d Cir. 2005)).  In Reeves, the Supreme Court said:

> "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  Liberty Lobby, supra, at 255, 106 S.Ct. 2505.  Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.  See Wright & Miller 299.  That is, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses."  Id. at 300.

---

[9]Predictably, in every case, an interested party provides evidence because the interested parties – Plaintiff and Defendant – possess the relevant information.

18

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-151, 120 S.Ct. 2097, 2110 (2000).  Here, the Court gives credence to the evidence favoring the nonmovant that is uncontradicted and unimpeached, and finds that Plaintiff fails to show by a preponderance of the evidence that Defendant's non-discriminatory reason for its adverse employment action was a pretext for discrimination.[10]

Plaintiff asserts that she "casts substantial doubt on a fair number of [Defendant's legitimate reasons]," and she need not discredit the rest of them because the "fact finder's rejection of some of the defendant's proffered reasons may impede the employer's credibility seriously enough to that a fact finder may rationally disbelieve the remaining [ones]."  Pl. Opp. at 11.  The Court does not make credibility determinations on a motion for summary judgment.  Moreover, Plaintiff does not cast doubt on Defendant's reasons for terminating her.  As Defendant correctly notes, the issue is not whether Plaintiff disagrees with Defendant's contentions that she was not satisfactorily performing her job; rather, she must establish that Defendant's justifications for her termination are a pretext for discrimination.  Df. Reply at 3 (citing Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993)).  Here, Plaintiff admits that her failure to complete her work was a dereliction of her duties, and thus, Plaintiff admits Defendant had good reason for its adverse employment action taken on April 9, 2007.

Plaintiff attempts to offer reasons why she did not promptly perform her job duties.  For example, Plaintiff argues that she did not bring the letter facsimile from Dr. Gupta to Harris's

_____

[10]Moreover, Plaintiff's argument here is unpersuasive because the Court need not, and does not, rely on Harris's uncorroborated testimony and certification to conclude no reasonable jury could find that this non-discriminatory reason for terminating Plaintiff was a pretext for discrimination.

19

immediate attention on March 20, 2007 because Harris had left the office early that day to visit colleges with her daughter, that night Plaintiff learned that her father was ill, and she took family medical leave the following day.  Id. 190:23-191:15, 192:4-11.  Plaintiff attempts to defend her failure to bring the letter to Harris or another SOMM employee's attention by stating that first Harris was unavailable and then she became distracted.  Id. 190:18-191:2, 192:4-16; Pl. Facts ¶ 12.  Plaintiff, however, overlooks the fact that in addition to her failure to show the letter to SOMM promptly or respond personally, in the letter, Dr. Gupta expressed continued dissatisfaction with Truesdell's performance.  Ex. D.

Truesdell also admitted that she was responsible for Dr. Hanstveit's account, that she received the document with the billing information from the doctor, and she did not have an explanation for why she did not complete the billing work, which SOMM received on December 4, 2006.  Truesdell Dep. 228:15-229:15.  Plaintiff stated that she could not bill without additional information from the provider, Pl. Facts ¶ 16; Truesdell Dep. 231:10-17, but admitted that this inaction on Dr. Hanstveit's account, which sat on her desk from December 2006 until the time of her leave in March 2007 was a dereliction of her job responsibilities.  Truesdell Dep. 230:4-10, 231:18-232:8.

Further, Truesdell could not recall when Russo's check, dated January 7, 2007, Ex. J., which was found on her desk, was received by SOMM and she could not explain why it was not processed or cashed.  Ex. K, Truesdell Dep. 91:6-95:6.  She admitted, however, it would not have been acceptable if it had been sitting idle on her desk from January 4, 2007 until March 21, 2007.  Id.  In addition, Truesdell admitted that if in fact she failed to act on Jennings and Przycki's patient accounts that Defendant allegedly believed were hers, it would have been a

dereliction of her job responsibilities, and thus, would have provided Defendant with another legitimate non-discriminatory reason for terminating her.  Truesdell Dep. 91:6-95:6, 120:3-14, 120:21-122:8.  Truesdell also admits that the letter from Auto Injury Solutions, dated January 5, 2007, was on her desk and she had no recollection of doing anything with it, delegating the work or telling the client she was unable to do the work.  Pl. Facts ¶ 24.  Therefore, Plaintiff concedes that there were several instances in which Defendant believed that she failed to properly perform her job duties, and indeed, Plaintiff conceded her failures.  Specifically, Plaintiff failed to process or follow up on specific bills, address inquiries from insurance companies and physicians or have her staff do so, and she had no explanation of why a patient check remained on her desk for months without taking any action.  As an at will employee, SOMM had a right to terminate Truesdell at any time for failure to adequately perform her job responsibilities.  Here, Plaintiff fails offers to offer any evidence to suggest that SOMM was motivated by a discriminatory purpose.  Rather, all of the evidence Plaintiff offers is consistent with Defendant's contentions that it fired her because she failed to perform to their expectations.  In addition, Plaintiff has failed to produce any evidence that contradicts Defendant's assessments or offers any opinion of her work performance contrary to that provided by Defendant.  Thus, Truesdell has failed to produce evidence to rebut Defendant's legitimate business reason for terminating Plaintiff and no reasonable jury could find that her unsatisfactory performance was not the cause of her termination as opposed to being a pretext for discrimination.  Accordingly, the Court grants Defendant's Motion for Summary Judgment.

**IV.    CONCLUSION**

Accordingly, Defendant's Motion for Summary Judgment is granted.


/s/   Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge


Dated:   June 9, 2009

22